# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

CARLA HAZARD,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

        Defendant.

Case No. C10-5924-JLR-BAT

**REPORT AND RECOMMENDATION**

Carla Hazard seeks review of the denial of her Supplemental Security Income application. She contends the ALJ did not properly consider the opinions of Daniel Neims, Psy.D., and the lay testimony of her mother and boyfriend. She also contends the case should be remanded to consider Dr. Neims' October 2008 report and her educational level. Dkt. 14. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## PROCEDURAL HISTORY

Ms. Hazard is currently 48 years old, has a 10th grade education, and a certified nursing assistant certificate; she has worked as an office helper.[1] On May 16, 2009, she applied for

---
[1] Tr. 31-38, 58, 112

REPORT AND RECOMMENDATION - 1

benefits, alleging disability as of December 20, 2006.[2] Her application was denied.[3] After conducting a hearing on August 21, 2008, the ALJ found Ms. Hazard not disabled.[4] As the Appeals Council denied Ms. Hazard's request for review, the ALJ's decision is the Commissioner's final decision.[5]

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[6] the ALJ made the following findings:

**Step one:** Ms. Hazard had not worked since May 10, 2007.

**Step two:** Ms. Hazard had the following severe impairments: disorders of the back (discogenic and degenerative), degenerative disc disease of the lower back, and affective disorders.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[7]

**Residual Functional Capacity:** Ms. Hazard can perform the full range of sedentary work as follows: With normal breaks, she can stand and walk for two hours in an eight-hour workday, and can sit for six hours in an eight-hour workday. She should avoid concentrated exposure to vibrations. She can perform simple, repetitive tasks and some complex tasks. She can interact with co-workers and supervisors and have superficial public contact.

**Step four:** Ms. Hazard could not perform her past work.

**Step five:** There are jobs Ms. Hazard can perform and she is thus not disabled.

Tr. 12-15.

---

[2] Tr. 112.
[3] Tr. 68.
[4] Tr. 7-17.
[5] Tr. 1.
[6] 20 C.F.R. §§ 404.1520, 416.920.
[7] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

**DISCUSSION**

**A.     The ALJ's evaluation of Dr. Daniel Neims' opinions**

The ALJ found Ms. Hazard's affective disorders were severe impairments. In assessing the limitations these mental impairments caused, the ALJ relied on the opinions of state agency reviewing physician Thomas Clifford, Ph.D., and Leslie Portovoit, Ph.D., another state reviewing physician, who concurred with Dr. Clifford's opinions. Tr. 8. The ALJ gave great weight to Dr. Clifford's opinion that Ms. Hazard could "do simple and some complex tasks that required only limited contact with the general public." *Id.* The ALJ found examining physician Daniel Neims, Psy.D., "came to similar conclusions as the claimant's functioning as to those of the state medical consultants," noting Dr. Neims "reported the claimant had no cognitive or social functioning limitations greater than moderate." Tr. 15.

Ms. Hazard argues the ALJ erred because (1) Dr. Neims' opinions are not similar to the opinions of the state agency consultants; (2) the ALJ did not give sufficient reasons to reject Dr. Neims' opinions; and (3) the ALJ's residual functional capacity assessment erroneously failed to include all of Ms. Hazard's limitations.[8] The Court agrees.

The record shows Dr. Neims' opinions are materially inconsistent with the opinions of the state agency consultants. Dr. Neims opined Ms. Hazard had moderate limitations in her ability to relate appropriately to co-workers and supervisors.[9] In contrast, Dr. Clifford found Ms. Hazard had no significant limitations in this regard.[10] Dr. Neims found Ms. Hazard had moderate limitations in her ability to exercise judgment and make decisions.[11] Dr. Clifford found she was not significantly limited in her ability to make simple work-related decisions. Tr.

---

[8] Dkt. 14 at 4-6; Dkt. 16 at 2-3.
[9] Tr. 224, 301, 318.
[10] Tr. 287-88.
[11] Tr. 224, 301, 318.

287. Dr. Neims found Ms. Hazard had moderate limitations in her ability to control physical or motor movements and maintain appropriate behavior.[12] Dr. Clifford found Ms. Hazard had no significant limitations in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. 288. Dr. Neims also found Ms. Hazard had additional moderate limitations in areas not addressed by Dr. Clifford, such as her ability to learn new tasks; perform routine tasks; and respond appropriately to and tolerate the pressures and expectations of a normal work setting.[13] In sum, substantial evidence does not support the ALJ's finding that Dr. Neims and the state agency physicians reached similar conclusions.

Because the ALJ believed all of the medical sources shared the same opinions regarding the extent of Ms. Hazard's mental limitations, the ALJ did not set forth any reasons to reject Dr. Neims' opinions. This is problematic. The ALJ clearly accepted Dr. Clifford's opinion that Ms. Hazard retained the ability to interact with coworkers and supervisors, and rejected Dr. Neim's opinion that she had moderate limitations in this area. This is evidenced by the ALJ's finding that Ms. Hazard had the residual functional capacity to "interact with co-workers and supervisor." Tr. 13.

The ALJ, however, was not permitted to reject Dr. Neims' opinions and favor Dr. Clifford's opinions without giving "specific and legitimate reasons" that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions; the ALJ must also explain why the ALJ's interpretation, rather than the treating doctor's

---

[12] Tr. 224, 301, 318.
[13] Tr. 224, 301, 318.

interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Here, as the ALJ failed to provide any reasons to reject Dr. Neims' opinions and favor the opinions of state consultants, the ALJ erred.

This error was not harmless. In determining a claimant's residual functional capacity, an ALJ must assess all the relevant evidence, including medical reports and witnesses' descriptions of limitation, to determine what capacity the claimant has for work. *See* 20 C.F.R. § 416.945(a). As noted above, the ALJ did not include all of the limitations found by Dr. Neims in assessing Ms. Hazard's residual functional capacity and failed to give reasons supported by substantial evidence for doing so.

This error carried over to the hypothetical question the ALJ posed to the vocational expert. Hypothetical questions that an ALJ poses to a VE to determine what work a claimant can perform "must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995)). Here, the vocational expert testified Ms. Hazard could perform certain work based on a hypothetical question that asked the expert to assume Ms. Hazard had "psychologically based limitations" that involved "no difficulties on maintaining social functioning and no difficulties in maintaining concentration, persistence or pace." Tr. 59. The expert was also asked to assume Ms. Hazard "was able to interact with coworkers and supervisors." *Id.* But, when the vocational expert was asked to assume Ms. Hazard had "moderate limitations" (which according to counsel was the inability to perform certain tasks 10-20% of the time) to learn new tasks, perform routine tasks, interact appropriately with coworkers and supervisors, and tolerate the normal expectations of a work place, the expert opined Ms. Hazard would not be able to "maintain employment." Tr. 63-64.

REPORT AND RECOMMENDATION - 5

Ms. Hazard argues, if credited as true, Dr. Neims' opinions establish disability and directs a remand of this matter for an award of benefits. The Court may remand a case for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). This occurs when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence. *Id.* at 1076-77.

Here, Ms. Hazard argues since Dr. Neims' opined she had a number of "moderate limitations," she is disabled. Ms. Hazard equates "moderate limitations" with not being able to perform work functions 10-20% of the time. However, a claimant is not automatically disabled just because he or she has moderate limitations. *See Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002) (affirming the ALJ's finding that a claimant who had "moderate mental residual functional capacity limitations" and a "marked limitation in her ability to maintain concentration over extended periods" could perform the unskilled jobs identified by a vocational expert). Here, the record needs clarification and development to determine whether Dr. Neims' holds the opinion that Ms. Hazard cannot perform work functions 10-20% of the time, as Ms. Hazard suggested in the hypothetical to the vocational expert, or whether the doctor holds some other opinion. On remand the ALJ should reassess all of Dr. Neims' opinions, including those contained in his report dated October 2, 2008. Tr. 354.

**B.     Consideration of Ms. Hazard's level of education**

At step five, the ALJ must determine whether a claimant is able to do any other work

considering among other things, the claimant's level of education. Tr. 15-16, *see also* 20 CFR 416.912(g) and 416.960(c). At the hearing the ALJ conducted, Ms. Hazard testified she was a special education student. Tr. 33. The ALJ indicated she would be "happy to go" with special education if there was documentary evidence to support it. Tr. 60-61. However, the ALJ found the documentary evidence showed Ms. Hazard had a regular education and thus asked the ALJ a hypothetical question that assumed this level of education. Ms. Hazard contends the case should be remanded because there is evidence she was a special education student, and the vocational expert indicated her opinion about Ms. Hazard's ability to perform work might be different if Ms. Hazard were a special education student. *Id.*

The Commissioner argues the ALJ properly rejected Ms. Hazard's claim she was a special education student because Ms. Hazard gave inconsistent statements about her education—she stated in her application for benefits she had a regular education but later testified she had a special education. Dkt. 15 at 10. However, the ALJ did not rely of this reasoning to reject Ms. Hazard's testimony and thus neither will the Court. *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). Instead, as noted above, the ALJ stated she would be happy to "go with" special education if there was documentary evidence in support.

Four days after the hearing, counsel submitted a letter to the ALJ indicating that upon further review, there was thus documentary evidence supporting Ms. Hazard's claim of being a special education student; specifically, Ms. Hazard's report card noted she had participated in the "learning center," a program which includes special education students. Tr. 107. The ALJ erred by failing to give any reason to reject Ms. Hazard's assertion that the report card supported her claim of being a special education student. This error is not harmless in light of the vocational expert's indication that she might have a different opinion if Ms. Hazard were a special

REPORT AND RECOMMENDATION - 7

education student. On remand the ALJ should assess whether Ms. Hazard is a special education student and its impact, if any, on her ability to work utilizing the services of a vocational expert if deemed necessary.

C.  **Credibility of lay witnesses**

Ms. Hazard's mother and boyfriend completed "function reports" regarding Ms. Hazard's symptoms.[14] The parties agree the ALJ erred by failing to address the testimony of these lay witnesses.[15] The Commissioner, however, contends this failure was harmless "because the ALJ appropriately accommodated all of Plaintiff's limitations stemming from her medically determinable impairments." *Id.* This argument fails. As discussed above, the ALJ erred in evaluating Dr. Neims' opinions and Ms. Hazard's educational level in assessing her residual functional capacity. Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing do. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Accordingly, the ALJ should consider the lay testimony on remand.

# CONCLUSION

For the foregoing reasons, the Court recommends the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. On remand, the ALJ should: reassess Dr. Neims' opinions, including those contained in his report dated October 2, 2008; consider the lay testimony, and assess whether Ms. Hazard is a special education student and its impact, if any, on her ability to work utilizing the services of a vocational expert if deemed necessary.

Any objections to this Recommendation must be filed and served upon all parties no later

---

[14] Tr. 130, 182.
[15] Dkt. 6 at 12.

than **August 23, 2011.** If no objections are filed, the matter will be ready for the Court's consideration on that date. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed twelve pages. The failure to timely object may affect your right to appeal.

DATED this 9th day of August, 2011.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9